**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-0849-18T1
                          A-1093-18T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

HAMZA ABDUL-MATIN,
a/k/a HAZMA ABDUL,
HAZMALBN ABDUL,
HAMZA ABDULMATIN,
ABDUL HEMZA, HAMZA
MATIN, HAZMA MATIN,
and HAZMA ABDULMATIN,

     Defendant-Appellant.

_____

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

NAJI S. MUHAMMAD, a/k/a
KHALIL ABDULLAH,
NAJI MOHAMMED,
NAIM MUHAMMAD,
NAJIR MUHAMMAD,

and NAJEE A. SIMS,

Defendant-Appellant.

_____

Submitted October 26, 2020 – Decided December 8, 2020

Before Judges Gooden Brown and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment Nos. 10-06-0664, 10-06-0665 and 10-06-0666.

Joseph E. Krakora, Public Defender, attorney for appellant Hamza Abdul-Matin (Steven E. Braun, Designated Counsel, on the brief).

Joseph E. Krakora, Public Defender, attorney for appellant Naji S. Muhammad (Karen A. Lodeserto, Designated Counsel, on the brief).

Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney for respondent (Meredith L. Balo, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the briefs).

PER CURIAM

In these separate appeals, calendared back-to-back and addressed in a single opinion, defendants Hamza Abdul-Matin and Naji Muhammad appeal from the August 9, 2018 Law Division order denying their respective petitions for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

We incorporate herein the facts set forth in State v. Abdul-Matin, Nos. A-0588-12T4, A-3811-12T4 (App. Div. Sep. 2, 2015). There, we recounted that defendants "were charged as co-defendants with: two counts of first-degree carjacking, N.J.S.A. 2C:15-2; two counts of first-degree robbery, N.J.S.A. 2C:15-1; second-degree possession of a handgun, N.J.S.A. 2C:39-4(a); and third-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)." Id. slip op. at 1-2. "Muhammad was charged individually with third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3), and second-degree eluding, N.J.S.A. 2C:29-2(b)[,]" and "Abdul-Matin was charged individually with fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2), and third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(9)." Id. slip op. at 2. Following a joint jury trial, "both defendants were found guilty as charged with the exception that Abdul-Matin was found guilty of lesser-included second-degree robbery rather than first-degree robbery." Ibid. "Additionally, both defendants pled guilty to second-degree 'certain persons' weapons charges[1] in exchange for a concurrent sentence. N.J.S.A. 2C:39-7(b)(1)." Ibid.

We summarized the underlying circumstances of the offenses as follows:

---

1 The certain persons offenses were charged in separate indictments.

On January 5, 2010, Gary Tenis[2] and Sonny Mitchell stopped at a Shell gas station for gas and cigarettes. Tenis exited their black Chevy Silverado pickup truck and entered the convenien[ce] store, while Mitchell remained in the vehicle, speaking on his cell phone. When Tenis returned, he was confronted by a man dressed in all black and wearing a ski mask, later identified as defendant, Muhammad.

Muhammad gained entry to the vehicle through the driver's side door, pointed a gun at Mitchell, and ordered him to exit. Heeding Muhammad's command, Mitchell began to open the passenger door, where a second masked man, later identified as defendant, Abdul-Matin, forcefully removed him from the passenger's seat. Defendants drove out of the station and Mitchell called the police.

Shortly thereafter, officers located the pickup truck at a traffic light and activated their overhead lights and sirens. Defendants proceeded to speed through the light and the officers gave chase. A second police vehicle, driven by Officer Helder Deabreu, was dispatched to block the pickup truck as it sped down Anna Street. The chase concluded when the pickup truck collided with Deabreu's cruiser.

[Id. slip op. at 4-5.]

After the crash, Muhammad was "removed" from the driver's seat "and placed under arrest" without incident. Id. slip op. at 5. However, Abdul-Matin was shot by police when he was observed "crouched on the backseat" holding a

---

2 Tenis passed away from natural causes prior to trial.

gun. Thereafter, Abdul-Matin was placed under arrest and transported to the hospital for treatment. Police recovered ski masks from both defendants and later recovered an operable air pistol in the rear of the pickup truck. Subsequent DNA analysis revealed that neither defendant could be excluded as possible contributors to the DNA mixture found on the pistol's grip. In addition, police obtained video surveillance footage of the carjacking from the Shell gas station.

We affirmed the convictions "but vacate[d] each sentence and remand[ed] for resentencing[,]" id. slip op. at 13, resulting in Muhammad being resentenced to an aggregate term of twenty-four-years' imprisonment, seventeen years of which were subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and Abdul-Matin being resentenced to an aggregate term of twenty-two-years' imprisonment, seventeen years of which were subject to NERA. Both defendants' petitions for certification were denied by the Supreme Court. State v. Abdul-Matin, 225 N.J. 221 (2016); State v. Muhammad, 225 N.J. 221 (2016).

In their timely PCR petitions, defendants raised both pro se and counseled claims of ineffective assistance of counsel (IAC). The PCR judge, Judge Candido Rodriguez, Jr., recounted the pro se claims as follows:

> (1) Trial counsel acquiesced to a supplemental jury instruction that deprived . . . [d]efendants of the right to a unanimous jury verdict.

A-0849-18T1

(2) Trial counsel conceded [d]efendants['] guilt to . . . offenses charged. Specifically, . . . trial counsel . . . stipulated that defendant[s] had neither a license nor a permit authorizing [them] to purchase, carry, or otherwise possess a firearm on the date of the incident, and that the recovered handgun was operable.

(3) Trial counsel failed to contest the jury verdict being against the weight of the evidence. Trial counsel failed to move to set aside the jury's verdict, pursuant to Rule 3:18-2.

(4) Trial counsel's failure to object to []misconduct by the prosecutor during summations cumulatively deprived [d]efendants of their right to a fair trial.

In the counseled submissions, Abdul-Matin asserted his "trial counsel was ineffective by failing to investigate the case and present a defense of voluntary intoxication." Additionally, both defendants alleged ineffective assistance of "appellate counsel" by "appellate counsel fail[ing] to raise cognizable issues on direct appeal . . . ."

Following oral argument, Judge Rodriguez denied defendants' petitions. In a comprehensive written decision filed August 8, 2018, the judge reviewed the factual background and procedural history of the case, applied the governing legal principles, and concluded defendants "failed to establish a prima facie case of [IAC] as to their trial . . . and appellate counsel, by a preponderance of the evidence." "[V]iewing the facts in [the] light most favorable to . . .

6

[]defendants," the judge found defendants failed to show that either counsel's performance fell below the objective standard of reasonableness set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 49-53 (1987), or that the outcome would have been different without the purported deficient performance as required under the second prong of the Strickland/Fritz test. Additionally, the judge concluded that "defendants [were] not entitled to an evidentiary hearing" because they failed to present any issues that could not be resolved by reference to the existing record.

In his written decision, the judge meticulously addressed each claim in turn. Regarding Abdul-Matin's claim that his trial counsel failed to "consult with a medical expert to determine whether [defendant's] mental state was impaired at the time of the incident" and "present a defense of voluntary intoxication[,]" the judge acknowledged that defendant's medical records from his hospitalization following the incident "show[ed] that [he] was heavily intoxicated." According to the judge, "[d]efendant's blood level was [.089], well above the legal limit for intoxication." In addition, in his certification submitted in support of his PCR petition, defendant averred that he "told his attorney that he could not remember what happened that night[,]" and "stated that he

7

consumed 'Four Loko' an alcoholic beverage that has been banned in several states." Defendant also "state[d] that he had a history of alcoholism."

However, the judge pointed out that this defense conflicted with "trial counsel's defense theory and trial strategy which was . . . misidentification." In that regard, trial counsel

> argued to the jury that neither defendant . . . was identified as the perpetrator of the carjacking and robbery by Mr. Mitchell, the sole eyewitness to the incident who testified at trial. Through effective cross-examination of Mr. Mitchell, counsel was able to point out to the jury, and then argue in her summation, that Mr. Mitchell never saw the perpetrators' faces and was unsure about their descriptions. Additionally, counsel effectively attempted to impeach Mr. Mitchell's credibility with his multiple felony convictions involving untruthfulness.

According to the judge, "[b]y raising a voluntary intoxication defense . . . trial counsel would have had to acknowledge . . . Abdul-Matin's involvement in the carjacking and robbery when . . . Abdul-Matin continuously represented that he was not guilty." Judge Rodriguez concluded that trial counsel's strategy of advancing a misidentification defense was objectively reasonable and just "because trial counsel's strategy was ineffective with the jury" does not equate to trial counsel being "ineffective."

A-0849-18T1

Nonetheless, the judge also discussed whether a voluntary intoxication defense would have been viable under the circumstances. Relying on State v. Cameron, 104 N.J. 42, 54 (1986), the judge noted that "for intoxication to negate an element of an offense, there must be a showing of 'prostration of faculties such that defendant was rendered incapable of forming an intent.'" See id. at 56 (articulating six factors to be considered in determining whether a defendant's intoxication is sufficient to satisfy the "prostration of faculties" test).

The judge pointed out that to support "his claim that he was 'heavily intoxicated' at the time of the incident," in addition to his certification, defendant submitted a "report by Dr. Zhongxue Hua, dated October 1, 2017."

> [I]n his report, which was prepared specifically for the purpose of this proceeding, Dr. Hua states that he reviewed defendant's hospital records from the night of the incident. According to Dr. Hua, the records indicate that defendant's BAC was 0.08 g/dL when his blood specimen was collected at 10:49 p.m. Further, according to Dr. Hua, defendant's BAC was approximately 0.113 g/dL at the time of the incident based on retrospective BAC extrapolation. Notably, Dr. Hua never interacted with defendant and never made any personal observations of defendant's demeanor or conduct on the night of the incident. Dr. Hua speculates that, at a BAC of 0.113 g/dL, defendant could have experienced "mental confusion, emotional instability, loss of critical judgment, memory impairment, sleepiness, and slowed reaction time."
>
> [(citations omitted).]

A-0849-18T1

However, the judge reasoned that "[n]one of these speculative symptoms point to 'extreme' intoxication capable of causing 'prostration of faculties such that defendant was rendered incapable of forming an intent'" under Cameron. See id. at 54-56. Likewise, defendant's September 25, 2017 certification that he was "'heavily intoxicated' at the time of the incident," and "had been drinking 'Four Loko' 'heavily' earlier that evening," conflicted with "his videotaped statement provided to the police on January 7, 2010, less than two days after the incident," wherein "defendant claimed that he only had a little cup of gin and a 12% 'Four Loko' drink that evening."

Next, the judge rejected defendants' claims "that they were denied the effective assistance of counsel where trial counsel acquiesced to a supplemental jury instruction" on "accomplice liability" that "deprived them of their right to a unanimous jury verdict." Relying on State v. Parker, 124 N.J. 628, 633 (1991), where the Court acknowledged that "a jury does not have to agree unanimously on whether an actor's criminal role is that of a principal or an accomplice[,]" Judge Rodriguez determined "the supplemental instruction was correct, permissible[,] and proper." The judge explained:

> After the court read the jury instructions including the
> instructions on accomplice liability, the State requested
> a supplemental jury charge. Specifically, the State

A-0849-18T1

requested that with respect to accomplice liability, the jurors did not have to be unanimous as long as they found that defendants acted with a common purpose. The court re-read the accomplice liability charge with the supplemental instruction included.

[(citation omitted).]

The judge then turned to defendants' claims that their trial attorneys were ineffective because they "conceded their guilt by consenting to trial stipulations that the air pistol was an operable firearm, and that . . . defendants did not have a license or a permit authorizing them to purchase, carry[,] or possess the air pistol on the date of the incident." Notably, as the judge astutely pointed out, these stipulations "did not concede . . . guilt because the State was still required to prove all the other elements of the relevant charges." Further, Judge Rodriguez explained:

> Defense counsel's strategy was to disassociate defendants from the weapon by stipulating that, in fact, neither [d]efendant[] had a license or permit authorizing them to purchase, carry or possess. Essentially, counsel was attempting to separate the carjacking that occurred outside of the Shell [g]as [s]tation from the police chase on Newark Avenue.[3]
>
> [(citation omitted).]

---

[3] The judge also pointed out that Muhammad's "[c]ounsel cross-examined the forensic scientist regarding DNA and how it is transferred, and then argued to the jury that the fact defendant's DNA was found on the gun does not actually prove that he had the weapon in his hands."

11

However, as to Muhammad, the judge acknowledged that

> [d]uring summation[,] counsel made statements conceding . . . defendant's guilt of . . . crimes charged. For example, counsel stated: "Now from that point forward, make no mistake. Naji Muhammad took chase. Naji Muhammad did wrong. Naji Muhammad is guilty of some of the things that are alleged in this indictment, and I'm not saying he's not."
>
> [(citation omitted).]

However, Judge Rodriguez explained:

> Considering the incriminating evidence that defendant was apprehended immediately after he cut off a police vehicle and crashed, trial counsel made a strategic decision to concede defendant's involvement in the chase. Although counsel conceded defendant's involvement in the police chase, he effectively attempted to mitigate the circumstances by offering a logical explanation for defendant's actions. On cross-examination counsel elicited form Sergeant Cockinos that defendant's driving privileges were suspended at the time of the chase. Counsel then used this information to suggest to the jury that defendant fled from the police not because he had just been involved in a carjacking and robbery, but because he wanted to avoid a ticket for driving while suspended.
>
> [(citations omitted).]

Next, the judge considered defendants' claims "that trial counsel was ineffective for failing to move to set aside the jury's verdict pursuant to [Rule] 3:18-2[,]" on the ground that "[t]here [were] no eyewitness identifications of

12

defendants as the assailants[,]" "[t]he physical description given by the victim . . . did not match . . . defendant[s]" and "the surveillance video from the Shell Gas Station failed to reveal the identities of the assailants." In concluding that the carjacking conviction was supported by the evidence, and a motion to set it aside "would have been denied[,]" the judge explained:

> Mr. Mitchell's account of what happened to him and Mr. Tenis on the night of the incident was corroborated by video surveillance footage from the gas station, which was in evidence.
>
> There was very strong circumstantial evidence linking defendants to the carjacking. Defendants were observed in the Silverado approximately three minutes after the 911 call was made. Once defendants saw the police, they immediately fled, taking the police on a high-speed chase that ended in a crash. Once defendants were removed from the truck, the police found a gun inside the truck and ski masks on defendants. At trial, Mr. Mitchell identified the gun as the same gun that was pointed at him during the carjacking. Neither defendant[] could be excluded as a contributor to the DNA found on the gun. Mr. Mitchell also identified the ski mask[s] found on defendants as the ski masks that looked like the ski masks worn by the carjackers. Mr. Mitchell identified [Muhammad's] jacket as being similar to the jacket worn by the carjacker with the gun. Finally, Mr. Mitchell testified that the carjacker who dragged him out of the truck was wearing something gray and, indeed, [Abdul-Matin] was wearing a gray hooded sweatshirt on the night of the incident.
>
> [(citations omitted).]

13

The judge also rejected Abdul-Matin's specific claim that trial counsel was ineffective by not moving "to dismiss the robbery count[s]" on the ground that "there was no evidence that defendants attempted to steal anything other than the Silverado." The judge reasoned that because "carjacking and robbery are separate [and] distinct charges[,]" trial counsel "had no legal basis to move to dismiss the robbery charges and convictions . . . ." See State v. Drury, 190 N.J. 197, 211 (2007) ("We cannot . . . conclude, based on a plain language analysis of the elements of robbery and carjacking, that the latter is merely a variety of the former."). Moreover, the judge noted that "the Appellate Division reviewed the sentence[s] . . . and . . . could have sua sponte dismissed the robbery conviction[s] but instead remanded to resentence . . . defendants to concurrent terms of imprisonment with the carjacking charge."

Turning to defendants' claims that trial counsel was ineffective in responding to the prosecutor's improper comments during summations, first, the judge provided a verbatim recitation of the objectionable comments as follows:

> But in the scheme of things that's a difficult situation.
> That proof is overwhelming because they're caught in
> the car. They don't have the burden to say anything, but
> what are they going to say?
>
> They don't have to say a word, . . . they don't have to do
> a thing. It is entirely the burden on the State. But here's

one thing that you can notice. There is no evidence whatsoever to contradict a single thing that Jane Caparuba, John Kokkinos, or any of the other officers said about the timeline.

Now you saw Ms. Caparuba, and the unique thing is you get to judge credibility, just the [twelve] of you, whoever deliberates, you decide the credibility, whether you believe them. You watched that woman walk in through those doors, you watched her walk right past you and sit up on the stand, that woman. Liar? Total liar, huh? Come into court, that woman comes in here, puts her hand right here, and swears before god to tell you the truth, and she lies about [ten] minutes of lying. Every other officer comes in and tell you the same thing, and they all lie, too. They are all conspiring and lying.

[(citations omitted).]

Next, Judge Rodriguez rejected defendants' claims of ineffectiveness, explaining:

At the conclusion of the State's summation, both trial attorneys for defendants voiced their concerns regarding the prosecutor's comments. The curative instruction was given after the objections were made. This was done because the defense attorney requested time till the next day to prepare for research and argument. In response to these concerns, the court gave curative instructions. The jurors were instructed to disregard any comments made by the prosecutor regarding . . . defendant[s'] silence and the credibility of the State's witnesses, and as jurors they were not to place themselves in the victim's situation. The [c]ourt further stated that defendants were presumed innocent until found guilty; that the burden was on the State to

15

A-0849-18T1

prove defendant[s'] guilt beyond a reasonable doubt; and that, to find defendant[s] guilty, the jury was required to find that the State proved each element of each charge beyond a reasonable doubt.

The judge also rejected Abdul-Matin's claims that his appellate counsel was ineffective by "fail[ing] to argue that his robbery conviction[s] should have been dismissed[,]" and by "failing to argue that the trial court committed reversible error when it gave an untimely curative instruction" in connection with the prosecutor's objectionable comments during summation. The judge determined "[a]ppellate counsel's conduct was objectively reasonable[,]" and defendant could not establish prejudice. As to the purported untimely curative instruction, the judge elaborated:

> The jury instruction was given in a timely manner. After the State finished its summation, the [c]ourt advised the jurors and counsel that it was going to let the jurors leave for the day. Defense counsel did not speak or ask to be heard before the jurors were excused; rather, counsel for . . . Abdul-Matin waited until the jurors left before informing the court that he had three objections to the prosecutor's closing argument. Here, . . . Abdul-Matin properly and timely raised [his] ineffective assistance of counsel claims in this PCR.

Finally, Judge Rodriguez rejected Abdul-Matin's "claims that the errors made by trial counsel, when viewed cumulatively, deprived him of effective assistance of counsel, even if individually they did not rise to the level of

prejudice under <u>Strickland</u>." The judge concluded Abdul-Matin "failed to demonstrate that counsel committed a single error that caused him prejudice or resulted in a deprivation or a fair trial. As such, there is no cumulative error, and defendant is not entitled to the relief sought." The judge entered a memorializing order, and these appeals followed.

On appeal, Abdul-Matin raises the following points for our consideration:

POINT I

TRIAL DEFENSE COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE DEFENDANT'S CASE AND TO PRESENT A DEFENSE OF VOLUNTARY INTOXICATION.

POINT II

TRIAL DEFENSE COUNSEL ACQUIESCED TO A SUPPLEMENTAL JURY INSTRUCTION WHICH DEPRIVED DEFENDANT OF THE RIGHT TO A UNANIMOUS JURY VERDICT.

POINT III

TRIAL DEFENSE COUNSEL SHOULD NOT HAVE CONCEDED GUILT AS TO THE UNLAWFUL POSSESSION OF A WEAPON COUNT.

POINT IV

TRIAL DEFENSE COUNSEL FAILED TO MOVE FOR A JUDGMENT OF ACQUITTAL DUE TO THE VERDICT BEING AGAINST THE WEIGHT OF THE EVIDENCE.

POINT V

TRIAL DEFENSE COUNSEL FAILED TO MOVE FOR A MISTRIAL IN RESPONSE TO PROSECUTORIAL MISCONDUCT DURING SUMMATION WHEN THE PROSECUTOR COMMENTED UPON DEFENDANT'S RIGHT TO REMAIN SILENT AND WHEN THE PROSECUTOR SHIFTED THE BURDEN OF PROOF.

POINT VI

APPELLATE DEFENSE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE ISSUES REGARDING THE TRIAL COURT'S FAILURE TO TIMELY INSTRUCT THE JURY REGARDING THE PROSECUTOR'S PREJUDICIAL COMMENTS MADE DURING SUMMATION AND FOR FAILING TO RAISE THE ISSUE REGARDING THE SHIFTING OF THE BURDEN OF PROOF.

POINT VII

APPELLATE DEFENSE COUNSEL WAS INEFFECTIVE BY FAILING TO RAISE THE ISSUE OF THE TRIAL COURT'S FAILURE TO DISMISS THE ROBBERY COUNTS OF THE INDICTMENT.

POINT VIII

TRIAL DEFENSE COUNSEL'S ERRORS CUMULATIVELY DENIED DEFENDANT A FAIR TRIAL.

Muhammad raises the following points for our consideration:

POINT [I]

THE PCR COURT ERRED IN DENYING DEFENDANT AN EVIDENTIARY HEARING BECAUSE TESTIMONY IS NEEDED REGARDING WHY TRIAL COUNSEL FAILED TO OBJECT TO A SUPPLEMENTAL JURY CHARGE THAT EXPLAINED TO THE JURORS THEY DID NOT HAVE TO AGREE UNANIMOUSLY THAT [DEFENDANT] ACTED AS A [PRINCIPAL] OR AN ACCOMPLICE.

POINT [II]

THE PCR COURT ERRED IN DENYING DEFENDANT AN EVIDENTIARY HEARING BECAUSE TESTIMONY IS NEEDED FROM TRIAL COUNSEL AS TO WHY HE CONCEDED [DEFENDANT'S] GUILT TO ILLEGALLY POSSESSING AN OPERABLE FIREARM AND ADMITTING HIS INVOLVEMENT IN ELUDING POLICE.

POINT [III]

THE PCR COURT ERRED IN DENYING DEFENDANT AN EVIDENTIARY HEARING AS TESTIMONY IS NEEDED REGARDING TRIAL COUNSEL'S FAILURE TO MAKE A TIMELY OBJECTION TO THE STATE'S HIGHLY PREJUDICIAL SUMMATION.

Merely raising a claim for PCR does not entitle a defendant to relief or an evidentiary hearing. See State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Rather, trial courts should grant evidentiary hearings only if the defendant has presented a prima facie claim of IAC, material issues of disputed

19

fact lie outside the record, and resolution of those issues necessitates a hearing. R. 3:22-10(b); State v. Porter, 216 N.J. 343, 355 (2013). A PCR court deciding whether to grant an evidentiary hearing "should view the facts in the light most favorable to a defendant . . . ." State v. Preciose, 129 N.J. 451, 463 (1992). However, "[a] court shall not grant an evidentiary hearing" if "the defendant's allegations are too vague, conclusory or speculative." R. 3:22-10(e)(2). Indeed, the defendant "must do more than make bald assertions that he was denied the effective assistance of counsel. He must allege facts sufficient to demonstrate counsel's alleged substandard performance." Cummings, 321 N.J. Super. at 170.

In turn, "we review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing." State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013). "If the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR], . . . then an evidentiary hearing need not be granted." Ibid. (alteration in original) (quoting State v. Marshall, 148 N.J. 89, 158 (1997)). We also typically review a PCR petition with "deference to the trial court's factual findings . . . 'when supported by adequate, substantial and credible evidence.'" State v. Harris, 181 N.J. 391, 415 (2004) (alteration in original) (quoting Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)). However, where,

20

as here, "no evidentiary hearing has been held, we 'may exercise de novo review over the factual inferences drawn from the documentary record by the [PCR judge].'" State v. Reevey, 417 N.J. Super. 134, 146-47 (App. Div. 2010) (alteration in original) (quoting Harris, 181 N.J. at 421). We also review de novo the legal conclusions of the PCR judge. Harris, 181 N.J. at 415-16 (citing Toll Bros., 173 N.J. at 549).

To establish a prima facie claim of IAC, a defendant must satisfy the two-prong Strickland/Fritz test, and "bears the burden of proving" both prongs of an IAC claim "by a preponderance of the evidence." State v. Gaitan, 209 N.J. 339, 350 (2012). Specifically, a defendant must show that (1) "counsel's performance was deficient[,]" and he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment" to the United States Constitution; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687, 694; see also Fritz, 105 N.J. at 52. A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Under the first Strickland prong, "a defendant must overcome a 'strong presumption' that counsel exercised 'reasonable professional judgment' and

21

'sound trial strategy' in fulfilling his responsibilities." State v. Hess, 207 N.J. 123, 147 (2011) (quoting Strickland, 466 U.S. at 689-90). Indeed, "counsel is strongly presumed to have rendered adequate assistance[,]" Strickland, 466 U.S. at 690, as measured by a standard of "reasonable competence." Fritz, 105 N.J. at 56. However, "'[r]easonable competence' does not require the best of attorneys," State v. Davis, 116 N.J. 341, 351 (1989), and "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89.

For that reason,

> an otherwise valid conviction will not be overturned merely because the defendant is dissatisfied with his or her counsel's exercise of judgment during the trial. The quality of counsel's performance cannot be fairly assessed by focusing on a handful of issues while ignoring the totality of counsel's performance in the context of the State's evidence of defendant's guilt. As a general rule, strategic miscalculations or trial mistakes are insufficient to warrant reversal except in those rare instances where they are of such magnitude as to thwart the fundamental guarantee of a fair trial.
>
> [State v. Castagna, 187 N.J. 293, 314-15 (2006) (citations, internal quotation marks, and brackets omitted).]

Thus, "[j]udicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689.

Of course, "[a]n ineffective assistance of counsel claim may occur when counsel fails to conduct an adequate pre-trial investigation." Porter, 216 N.J. at 352. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." State v. Chew, 179 N.J. 186, 217 (2004) (quoting Strickland, 466 U.S. at 691). "A counsel's failure to do so will 'render the lawyer's performance deficient.'" Porter, 216 N.J. at 353 (quoting Chew, 179 N.J. at 217). However, "when a petitioner claims his trial attorney inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." Cummings, 321 N.J. Super. at 170 (citing R. 1:6-6).

Under the second Strickland prong, defendant must prove prejudice. Fritz, 105 N.J. at 52. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691. This prong "is an exacting standard[,]" and "'[t]he error committed must be so serious as to

A-0849-18T1

undermine the court's confidence in the jury's verdict or the result reached.'" State v. Allegro, 193 N.J. 352, 367 (2008) (alteration in original) (quoting Castagna, 187 N.J. at 315). "Important to the prejudice analysis is the strength of the evidence that was before the fact-finder at trial." State v. Pierre, 223 N.J. 560, 583 (2015). In that regard, "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Ibid. (quoting Strickland, 466 U.S. at 696).

The Strickland/Fritz standard applies equally to both trial and appellate counsel. State v. Guzman, 313 N.J. Super. 363, 374 (App. Div. 1998); see also State v. Morrison, 215 N.J. Super. 540, 546 (App. Div. 1987). Indeed, "[t]he right to effective assistance includes the right to the effective assistance of appellate counsel on direct appeal." State v. O'Neil, 219 N.J. 598, 610 (2014). However, while appellate counsel "should bring to the court's attention controlling law that will vindicate [his] client's cause[,]" appellate counsel "does not have an obligation 'to advocate ad infinitum[.]'" Id. at 612. Like trial counsel, appellate counsel is not obligated to raise issues "counsel deems [to be] without merit[,]" State v. Gaither, 396 N.J. Super. 508, 515 (App. Div. 2007) (quoting R. 3:22-6(d)), and "[t]he failure to raise unsuccessful legal arguments does not constitute [IAC]" at either the trial or appellate level. State v. Worlock,

24

117 N.J. 596, 625 (1990). In fact, in <u>Jones v. Barnes</u>, 463 U.S. 745 (1983), the United States Supreme Court held that appellate advocates must exercise "professional judgment" in "winnowing out weaker arguments on appeal and focusing on . . . a few key issues[,]" selecting only "the most promising issues for review." <u>Id.</u> at 751-52. The <u>Jones</u> Court also cautioned against "judges . . . second-guess[ing] reasonable professional judgments" of appellate counsel. <u>Id.</u> at 754.

Applying these principles, we are satisfied defendants failed to make a prima facie showing of IAC under the <u>Strickland</u>/<u>Fritz</u> test, and we discern no abuse of discretion in the judge's denial of defendant's PCR petition without an evidentiary hearing. On appeal, defendants renew the same contentions that were soundly rejected by Judge Rodriguez in his well-reasoned written decision. Based on our review of the record, we conclude Judge Rodriguez thoroughly addressed defendants' contentions, and we affirm for the reasons expressed in the judge's decision. We also conclude that the arguments are without sufficient merit to warrant further discussion here. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

25

A-0849-18T1